## HAMPSTEAD'S PETITION.

The road commissioners, to whom a petition for leave to discontinue a highway which has not been constructed, is referred, are required to report if any and what changes have occurred since the laying out of the road, affecting the expediency of it, so that the court may see whether such changes have occurred, and how they affect the case. Of the importance of these changes the court will not judge, such being exclusively the office and duty of the commissioners.

It is no objection to a report discontinuing a highway, that the changes de-described therein have occurred since the petition was committed.

The commissioners are the sole judges of what is a sufficient cause to adjourn, and where no corruption is surmised, the court will not revise their decision of a motion to adjourn, founded on the state of the weather or of the earth.

PETITION for leave to discontinue a highway.

From the report of the commissioners, it appeared that upon notice to the parties interested, they entered upon the discharge of their duties on the twenty-first day of November, 1848. Upon proceeding to examine the highway, the counsel for the parties opposing the discontinuance, submitted a motion to adjourn the proceeding, for the reason

that the ground was frozen and covered with snow. The motion was denied, and the commissioners continued the examination from day to day, till the twenty-fourth day of November, and then adjourned to the second day of January, 1849, at which time they renewed their labors, in the presence of all the parties represented at the former hearing, whose respective allegations and objections were fully heard; and the commissioners having made due inquiry and careful investigation, were of the opinion that since the laying out of said highway, there had been a change of circumstances affecting the expediency of said highway, and specified the following:

First, there has been a new highway built in and by the town of Hampstead, from Hoit's corner, so called, at Hampstead Peak, to the main road leading from Chester to Haverhill, near Benjamin Garland's house; and the old road, from said Garland's to Bricket's corner, has also, in connection with the same, been repaired.

Secondly, the highway in Atkinson, near Little's corner, so called, has been shortened considerably, and a large hill avoided, by the building of a new road in said Atkinson. The building of the above mentioned two roads in Hampstead and Atkinson, have so shortened the distance to be saved by the road in controversy, that the distance from Danville and Poplin to the city of Lawrence would be but one hundred and seventy-two rods and sixteen links nearer than by the upper or substituted road; from Sandown, Chester and Raymond, only thirty rods nearer; and the present roads, as now built, are better, and accommodate the travel better, than the aforesaid highway would, if built.

Thirdly, the road through the town of Salem, on the upper or substituted route, has been repaired and improved; the whole of the tax of the district in which it is situated having been expended thereon.

Fourthly, there has been a highway laid out and built in

and by the town of Hampstead, from near Collins' corner, in Danville, to the main road leading from Sandown to Plaistow and Haverhill, by which lumber and other merchandise from Danville and Poplin may be transported to the several depots, and from thence to Lawrence, cheaper and more expeditiously than by any other.

The report concluded: " The undersigned are of the opinion that the changes above noted do so affect the case as to render said highway no longer necessary, and that the same should be discontinued by reason of such change of circumstances."

Moses Williams and others, original petitioners for said highway, objected to the report, and moved that the same be rejected, for the following reasons:

1. Because the changes alleged by said commissioners are not such as are intended by their commission, and furnish no legal ground for discontinuance.

2. The first change stated by said commissioners, to wit, the building of a new highway by said Hampstead, is groundless, because said new highway was laid out before the laying out of the Moses Williams route now asked to be discontinued; was offered by said Hampstead as a substitute therefor, before the board of road commissioners which laid out said Moses Williams route; was examined by them, and rejected as not furnishing the accommodation required by the public.

3. The second change alleged, is the new road in Atkinson. This was laid out and nearly completed, and examined and considered by the commissioners who laid out the said Moses Williams route.

4. The third alleged change, is the improvement of the old road in Salem on the substitute route. This matter was offered and considered by the former board of commissioners; and the repair of an existing road by the town liable to repair it, is not a change within the intent of said commission.

5. The fourth change, as alleged, does not give the court

information upon which they can understand that the Moses Williams route is in any degree less necessary, by the building of said new highway, or how it affects the case.

6. The alleged changes did not occur until after the vote of said Hampstead to discontinue, which was passed March 15, 1848.

7. The alleged changes did not occur until after the filing of the petition of said Hampstead, on the 7th of July, 1848.

8. The alleged changes did not occur until after the issuing of said petition, at September term, 1848.

9. Said commissioners made their only examination of the routes, under said commission, at a time when the ground was frozen and covered with snow, and improperly overruled the motion of the respondents to adjourn their examination to a proper season for such examination.

*Stickney*, for the petitioning town.

*French*, for the original petitioners.

Woods, J. There has been a great degree of uniformity in the language of the different statutes by which the powers and duties of committees of the courts of common pleas, and of road commissioners, have successively been defined, from the statute of 1829 to the one now in force. By the first named statute, petitions for the discontinuance of highways were not in terms required to be referred to a committee; but the practice soon prevailed to refer such, as well as petitions for laying out and altering highways; and the act of 1840, providing for the choice of road commissioners, in accordance with that practice, required all petitions legally coming before the court of common pleas, and relating to roads, to be referred to that board, and gave to their report the same force with the report of the committees previously required to be appointed by the court. The act further provided that no highway should thereafter be laid out, widened or straightened, otherwise than as therein pointed out.

This provision, not extending so as to restrain the court from discontinuing roads otherwise than is therein provided, is not contained in the Revised Statutes now in force; which provide, in broad terms, that all petitions relating to highways, shall be referred to the road commissioners, and therefore, by implication, restrain the court from proceeding otherwise to determine the merits of such petitions. Moreover, by sec. 3, chap. 54 of the Revised Statutes, the road commissioners are required to " make report to the court in each county in which any highway laid out, altered or discontinued by them shall pass." Thus the power and jurisdiction of the road commissioners, in regard to petitions for the discontinuance of highways, is fully established, as in petitions for laying out and altering them, and the court of common pleas have no course but to refer such petitions, when regularly before them.

The nature and extent of the jurisdiction of the road commissioners, in all these cases, is sufficiently indicated by the statutes. They are charged with inquiry into all the facts and circumstances affecting the expediency of granting, wholly or in part, the petition referred to them, and with a final and conclusive judgment and discretion as to their force and bearing; and, in short, it is their duty to report to the court the judgment which is to be rendered upon the petition. The court has no power to revise the doings of the commissioners, for the purpose of ascertaining whether they have judged wisely and correctly as to these particulars, nor for any purpose but to see that their proceedings have been regular, and that fraud or surprise has not been used to vitiate their results.

There is one particular in which the court interposes a check or qualification upon the discretion of the commissioners. When a road has been laid out, and a petition for leave to discontinue has been preferred, before the same has been opened for public travel, the commissioners to whom the petition is referred are required to report " whether any

change of circumstances, in any matter affecting the expediency of laying said highway, has occurred since the same was laid out, so that the same is no longer necessary, and should be discontinued by reason of such change of circumstances; and if so, to report the nature of the change, with the particular circumstances, and how they affect the case."

This rule was adopted as an equivalent for the old practice of referring all such petitions to the committee that laid out the road, for the plain purpose of preventing applications of that sort from assuming the character of appeals from one board to another, and of guarding the court from the scandal of recording different and conflicting judgments at different times, upon the same state of facts, leading to interminable vicissitudes and litigation. The rule really imposes no check upon the commissioners, except to prevent them from directly reviewing and reversing the judgment of their predecessors, upon the same case.

In requiring them to report whether any and what changes have occurred, their nature, and how they affect the case, the rule enables the court to see whether such a change has intervened as justifies the action of the board; whether there are elements in the new case that distinguish it from the old. Of the importance of these elements, and how far they ought to influence the minds of the commissioners, they are, as in all other things affecting their judgment, the sole and conclusive judges.

This is necessarily so. It is easy to see that changes which to the court, with their limited means of forming a correct opinion, might seem of very small importance, might, to the commissioners, whose mode of proceeding is such as to give them very different and better means of judging, seem to be of quite another character.

The court, therefore, will go no further than to inquire whether changes have actually occurred in the case which may affect the expediency of opening the road. Of the possible changes in the circumstances of a country yet new,

and somewhat engaged in improvements; in which new villages and places of trade are frequently and rapidly growing up, and new avenues of communication are almost all the time in progress, to meet the demands created by the building of new towns, it is wholly impossible to trace out an idea, in advance of the cases that arise. Nor is it at all necessary. The present case presents a change of circumstances, which it is easy to see may, in some degree, affect the expediency of expending money in the construction of the road in question.

The first one indicated is, that a new highway has been built in and by the town of Hampstead, between two points described in the report. It is insisted that the building of this road is no change of circumstances which ought to have been considered, because the road was actually laid out at the time the first examination was made. But we think there is a marked difference between the laying out and the construction of a road. It is easy to see that if the road had been actually constructed at the time of the first examination, the commissioners, although not regarding it the best, might have deemed it as affording such amount and degree of accommodation to the public, that they would have decided not to lay out the one prayed for, whereas the mere laying out of the town road was no pledge to the public that it would ever be built, and imposed no burden upon the town which they had not the power to put off by their own act. Besides, it is not always easy to foresee the extent to which a road not finished may actually serve the public; and it not unfrequently turns out that very erroneous estimates have been made, sometimes exceeding, and at other times falling below the actual business of the road, when opened for public use. And this last observation sufficiently vindicates the second cause for the discontinuance, mentioned in the report, which is the completion of the new road in Atkinson. But the report does still more, in showing that the two roads last named are a substantial equiva-

lent, in certain particulars, for the road which is in contro-
versy.

Without following the report further, and even admitting
the sufficiency of the objections taken to the other alleged
changes, we think that the report has, with sufficient clearness,
described changes that have occurred since the road in ques-
tion was laid out, and shown how they affect the case.
That they were of sufficient weight to justify the conclu-
sion to which they came, we are not permitted to doubt,
because it is not our province to decide.

As to the sixth, seventh and eighth exceptions taken to
the report, we are unable to satisfy ourselves that it is neces-
sary for the commissioners, if they find that changes of suf-
ficient importance have occurred, since the road was laid
out, to inquire when they occurred. We think the towns
have a right to the benefit of any events that may have
happened to exonerate them from the burden which the
commissioners deem an unnecessary one at the time of the
hearing. This would seem to be just to all parties, and is
certainly within the terms and the reason of the rule which
the court have adopted. Should the period at which the
change may have occurred require the consideration of the
court, on the subject of costs, it is a matter which may be
set right without much difficulty.

The power of adjourning the proceedings from day to
day, pertains to the road commissioners. To that power is
necessarily attached the prerogative of judging as to what
is a sufficient cause for adjourning, or for refusing a motion
for adjourning. It is wholly impossible for this court to say
whether the state of the weather, or the condition of the
earth, at the time the commissioners made their examina-
tion, was such as to interpose any material obstacles to the
proper discharge of their duties or not. They were the
proper judges of such a question, and in the absence of all
surmise of corruption, we shall not attempt to revise their
decision of it. The objections must be overruled, and

*The report accepted.*